432 P.2d 47

### CROWN ROOFING AND ENGINEERING COMPANY, dba Roofers Supply Company, Plaintiff and Appellant,

v.

### Stanley D. ROBINSON, dba Reliable Roofing Company, and Russell Kidder et al., Defendants and Respondents, Olympic Construction Company, Inc., Intervenor.

No. 10723.

Supreme Court of Utah.

Sept. 27, 1967.

418

Horace J. Knowlton, Salt Lake City, for appellant.

David E. West, Salt Lake City, Don Blackham, Granger, for respondents.

CALLISTER, Justice:

The plaintiff Crown Roofing and Engineering Company appeals from the adverse judgment of the trial court denying it recovery against several homeowners who failed to obtain a bond as required under Utah Code Ann. Secs. 14–2–1 and 14–2–2 (1953).

About 25 defendant homeowners entered into written contracts with the gen-

eral contractor, Olympic Construction Company, Inc., to construct homes on their respective premises. They did not obtain a bond as required under the provisions of Utah Code Ann. Sec. 14-2-1 (1953). The general contractor subcontracted the roofing on each home to Reliable Roofing Company. The subcontractor, Reliable Roofing received its roofing supplies from several concerns, one of which was the plaintiff Crown Roofing and Engineering Company. In most cases the suppliers would deliver the materials directly to the subcontractor's warehouse.

After the job on each home was completed the homeowner would pay the primary contractor in full. The prime contractor in turn paid the subcontractor, but, since it went bankrupt in July of 1964, the subcontractor failed to pay plaintiff for the materials furnished. In order to obtain compensation for the supplies it furnished, the plaintiff brought suit against 25 homeowners based on the statute imposing liability upon those persons who enter into contracts involving $500 or more for the construction of any building who fail to obtain good and sufficient bonds. Utah Code Ann. Sec. 14-2-2 (1953).

The following facts were established at trial. The plaintiff had delivered supplies which went into the construction of two different kinds of roofs. Four of the defendants had "shingle-type" roofs while the remaining defendants had "built-up-type" roofs consisting of felt, tar and gravel. The trial court found that all of the roofing materials which went into the homes of "shingle-type" roofs were purchased from the plaintiff-supplier. The court found that the material which went into the "built-up-type" roofs was purchased not only from the plaintiff but also from other suppliers. It was established that these materials were purchased in bulk and delivered to the subcontractor's warehouse in Salt Lake City.

The evidence at trial showed that plaintiff had supplied all of the materials involved from January 1, 1964, until July 15, 1964, except certain materials claimed to have been delivered to the defendant Youngberg on July 23, 1964. The defendants contended that since all of the materials except those delivered to the Youngberg job were delivered more than one year prior to the time plaintiff filed its complaint that all claims against them except against Youngberg were barred by reason of the one-year statute of limitations recently incorporated in the bonding statute which creates the present cause of action. Utah Code Ann. Sec. 14-2-2 (Supp. 1965). However, since the complaint was filed on July 15, 1965, the Youngberg claim would not be barred by the one-year statute. However the defendants contended that Youngberg had a "built-up-type" roof and, since the plaintiff had not been able to show that it had supplied materials which

went into that particular roof, it was not a materialman under the statute and therefore was without any cause of action.

The plaintiff disagreed and contended that this action under the bonding statute was governed by a three-year statute of limitations since it was an action for a liability created by a statute of this state, other than for a penalty or forfeiture. Utah Code Ann. Sec. 78-12-26(4) (1953).

The trial court refused to apply the one-year statute of limitation found in Utah Code Ann. Sec. 14-2-2 (Supp.1965) because the present action arose prior to the effective date of that amendment. However, since the applicable bonding statute at the time the cause of action arose did not provide for any specific period of limitations, the court decided that the action was governed by the one-year statute of limitations applicable to violations of statutes giving rise to a penalty. Utah Code Ann. Sec. 78-12-29 (1953). Therefore, all of the claims except the action against Youngberg were held barred by the one-year statute. The trial court agreed with the defendants that the plaintiff was not a materialman within the provisions of Utah Code Ann. Secs. 14-2-1 and 14-2-2 (1953) and also dismissed the action against Youngberg.

■ The legislature has provided that the owner of any interest in land who enters into any contract involving $500 or more, for construction or improvements on such land shall, before any work is commenced, obtain from the contractor a bond in a sum equal to the contract price. Utah Code Ann. Sec. 14-2-1 (1953). For failing to obtain such a bond it has provided that the owner shall be personally liable to "any person who has furnished materials or performed labor for or upon any such building, structure or improvement." Utah Code Ann. Secs. 14-2-1 and 14-2-2 (1953). The owners in the present case are not in privity with the supplier-plaintiff, owe nothing to the primary contractor, and, except for the above provisions in the bonding statutes would owe nothing to the plaintiff-supplier. The trial court correctly concluded that the plaintiff was not a person furnishing materials under the contract entered into for the construction of a home. The plaintiff extended credit to the subcontractor and not to the contract job.

In Crane Co. v. Utah Motor Park, Inc., 8 Utah 2d 413, 416, 335 P.2d 837 (1959), this court held that the *"true nature of the relationship"* must be established in order to determine whether a supplier was within the provision of Sec. 14-1-2, U.C.A.1953.

In the instant case, the supplier had had business dealings with the roofing subcontractor for a period of five or six years. The plaintiff-supplier had maintained an open account with the subcontractor for at least two years prior to the commencement of the contracts involved in the instant

 

case. When payments were made, plaintiff credited them to the general account and never to the individual job. In one instance, when the subcontractor made a payment of $7,000, the plaintiff applied $5,000 of that sum to discharge a note previously executed by the subcontractor to the plaintiff. The ledger accounts of plaintiff indicated that when the subcontractor made a payment it was applied to discharge the oldest indebtedness without regard as to where the materials were used. It is also significant that the subcontractor was engaged generally in the roofing business, that he purchased the bulk of his supplies from plaintiff, and that at the time he was the subcontractor for the Olympic Construction Company, this one contract was a relatively small proportion of his business. In fact, he testified that his contract with Olympic constituted approximately 5% of his business as a roofing contractor.

The foregoing evidence clearly indicates the nature of the relationship between the subcontractor and the plaintiff. The subcontractor purchased the bulk of his materials from plaintiff, which he used in his business generally, and plaintiff, without regard to the subcontractor's use of them, simply maintained an open account to reflect the purchases. There is no evidence that the supplier was furnishing the material under any specific contract for the construction of a home. Under these circumstances, the fact that plaintiff delivered some shingles directly to the job site is not a controlling factor; therefore, the trial court was justified in finding plaintiff not to be a materialman.

Since plaintiff's action is not within the purview of the statute, it is unnecessary for this court to determine whether the statute is in the nature of a penalty or a liability created by statute with the consequent controlling periods of limitation.

Affirmed. Costs to respondents.

CROCKETT, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.